Our next case for argument is Dudum v. Arutz. Good afternoon and may it please the Court. My name is James Perrinella and I represent the plaintiffs and appellants in the case. First, I'd like to thank the Court for expediting review of this case. I understand your schedule is busy and I appreciate that. This case presents the issue of whether voters have a right to have their vote counted in the crucial, most crucial part of an election, that is, when the winner is decided. Absent this Court's intervention, thousands, actually ten thousands of voters in San Francisco's November mayoral election will not have their vote counted. So what does exactly that mean? Their vote, I mean, they voted and they vote for up to three people and those votes are counted. And it seems to me that one way of looking at what's happening here is they've lost. They voted for three losing candidates. Now, you could take – it's true that the ordinance says count, but what's – it would be exactly the same thing if you simply carried their final third vote all the way through and counted it. You'd still come to exactly the same place, right? In other words, they've just voted for three losing people. Actually, it wouldn't come to the same place. There are two problems with that. First, the charter itself, section 15-102 and 15-103 says they should not be counted. I understand it says that, but it's just a way – perhaps an unfortunate way of saying that you're not going to matter anymore. Here's the second part of it. If you were to carry – we have this example which you've mentioned. We have it in front of us. Well, you wouldn't have a majority. It's really the denominator that's the issue here, really, not the numerator, essentially. So if you were to extend the votes over, you would not only violate the charter. Kagan. Well, except for something else, which is that another thing that the charter amendment says that is not quite right is that you really, no matter how you look at this, this is not a majority vote. It's not a majority vote. It's a plurality vote. It's just a question of how do you figure out when you're finished. Well, I think you have to go by what the charter says. But it's not a majority vote, in fact. The charter says that you don't – first, you don't carry the votes forward. And so those votes are not counted in the final round. The charter forbids that. Now, I understand what Your Honor is saying. If you were writing it from scratch, that might be one thing. I'm saying that as a matter of mathematics, it's all the same thing. At the end. If you were to change multiple versions of the charter, if you were to change the provision that says you must have a majority of continuing ballots, you're not – I wouldn't change either of those things. I would just set up my little charts the day that I was counting a little differently. And, in fact, I think some of them are set up that way. You can look at the charts and see what the total vote in the election was. So to that degree, it is carried forward. So all you really have here as a mathematical – in terms of what's counting is that you're not continuing to reiterate that you've lost. So you're not continuing to show these people that haven't voted for a losing candidate, but you could do that. It wouldn't make a difference. And similarly, you're figuring out when to stop based on whether there's a majority of the remaining votes, but in fact it's not a majority system. It's a plurality system. Well, that's not the way it was sold to the voters. But more importantly, I think the question is, I mean, what does the Court make of the fact that you can't have a vote counted in that final round? That is the most important round of the election. That is when the winner is decided. And the problem with this is, as we see it, and I understand it's a question of first impression, but the problem is that large percentages of voters – we're not talking about a few voters here – large, significant percentages of voters are denied any voice in the final round. Let me explain another problem with this system. If you have a plurality system, a regular plurality system, right, and somebody votes for the loser. I'm sorry. If you have a priority system, first and foremost. You vote for the person with the fewest votes. Right. Right? You're, you know, your vote, you can say it doesn't count or you can say you lost. No, you've had that vote counted. That's the problem, or one of the problems, with this system. If you've got a plurality system and I – and there are ten candidates running and I vote for the last place candidate, my vote counts, the problem with this system is that when the winner is decided, in this case the 20th round, there are no votes counted for substantial percentages of the people. Kennedy, because they didn't vote for the right candidate. And that's another flaw in this – in the system. If you want to have a vote counted in the final, in this supervisorial district 10 race, et cetera. You can stay by the microphone. We have the little – we have the chart in front of us. If you want a vote counted, you have to, at the beginning, look at the 21 candidates that were running and say, kind of guess, how do I know who's going to be the two remaining candidates? Only if you guess the right two out of 21 can you have a vote counted in the final round. And that's a problem. This is not a problem. Breyer. When I went through the ballot that you provided us, and I sort of just looked at it carefully and it says you get your first vote, your second vote and your third choice. I thought that was pretty good. You get extra – it's like you get extra votes. I failed to – you know, I may not pick the right guy, but in the end I had three votes. And as you just – as Judge Berzon just said, sometimes, you know, you don't pick the right guy. You don't pick the winner. But you have your vote counted every time. And this is the problem. Well, look, I'm looking at – I had, you know, one, two, three. I'm looking at your picture here, okay? It says at the bottom, total, right? Total is the total number of votes, right? At the very bottom, total. And that goes all the way through. All the way through, there's 20,550 total. Your Honor, look one line above that where it says continuing ballots. I understand that, but the total is always there. They're always being counted. No, no. Here – let me just explain this, because it's not easy to understand. The line above continuing ballots are the valid ballots cast in the first round. And there were 17,808 valid ballots cast in the first round. If you go to the far right column, you'll see that the valid ballots counted in the final round were 8,200. And right above that number, 9,503 are the exhausted ballots. So we started out with 17,808 people casting valid ballots. But by the end, the only ones that counted in determining who the winner was were the 8,200. And that is where we see the problem. I think we have the system straight. Could you give us some legal parameters now? I'm sorry? Legal parameters. In other words, I understand that there – I understand the verdict system and I understand that we have a kind of continuous – continuum of balancing in this voting area. Now, you're arguing for a strict scrutiny at some point. Yeah, we are. But we believe and we've argued that this system fails both strict scrutiny and the intermediate level under Anderson, Burdick, and Crawford. And – Now, you're not disputing the interests, the governmental interests as to why they have – as I understand it, as to why they have the three person – the three-candidate cutoff as opposed to an entire voting for everybody. You don't seem to be saying those interests are not sufficient. You seem to be saying they could have a plurality system or they could have a runoff system. What the city is basically saying is we can't do unrestricted instant runoff voting. So, therefore, the only thing that we or the court needs to look at is the other alternative of restricted instant runoff voting. And we think that is not what the law says. Even using an intermediate level of scrutiny under Anderson and under Burdick and under Crawford, the city's interest – all the city's interests can be met by these alternative systems. And the best evidence of that is the fact that the city is running those alternative systems in other elections. But certainly voters' interests are not met by the plurality system. They have less – less impact rather than more. Well, the – I don't know that that's necessarily true, Your Honor, because in effect what we have now is a plurality system with a restricted instant runoff voting. But we're not saying the court has to dictate which system the city uses. The city had been using a plurality system until 2000. Let me just – can I just clarify one thing? You gave an answer to Judge Brezon's question about the interest that the government raises. And the government, for example, they said, well, there's – we have a restricted system because if we would allow all – an unrestricted system, there would be possible voter confusion. We can't – our computers aren't sophisticated enough to handle this. And they have four or five reasons that they offer for the restricted system. We don't dispute that. You don't dispute any of that? No. None of that. So those are all valid reasons on the part of the city for restricting it to three candidates. Those are valid reasons to go from unrestricted IRV to restricted IRV, but the analysis doesn't end there. Right. I understand that. And that's what's the point. I mean, you could have said we dispute the factual basis for that and we need a trial to resolve whether or not this really results in voter confusion or whether or not they can or could design in a reasonable amount of time a computer system that could handle unrestricted voting. We could have done that. And you didn't. So that's all. We didn't do that. I just want to make sure I understand that. We think the city is – you know, we took the deposition of Mr. Ornst. We think that there are legitimate reasons for the city to say our voting equipment cannot run unrestricted IRV, and we accept that. The problem, though, is that the analysis doesn't stop there. Under Anderson, under Burdick, under Crawford, although that was a facial case, the analysis has to go on. You can't just say, well, ipsy-dixit, you know, we can't do unrestricted IRV, so restricted IRV is the only alternative. But what I – what struck me about it is one – no, two things struck me about it. One is that the other systems, which are essentially a plurality system and a – and a runoff system, right? I mean, those are the other options that you're – The general runoff, yes. Those are the two. Those are two, and there may be others. But those are the two you've put forward. Right. And both of them obviously do have governmental interests. There are serious governmental reasons for not doing them. I'm sorry? I didn't – There are serious governmental reasons for not doing them, are there not? I don't believe there are at all. Fifty-seven of the fifty-eight counties use those systems. That's true. And San Francisco and some other places have decided we think we can do this better. So – and there are obviously all kinds of competing systems. But the question is why – what is wrong with the A, the legitimate interests that are asserted with regard to why not to do the two systems you're putting forward, and also why do they help your – necessarily, they may help your client, but why do they, in some measurably superior way, make the voting more accurate or more acceptable? Well, I don't think that's the test rule. I think what the test is under Anderson and Burdick is, for the intermediate level of scrutiny, is that the court in that circumstance is to identify the interests that are asserted by the city to determine what those interests are, then to determine whether those interests make it necessary to infringe on voters' rights. And the problem here is – and so what the courts do, what the court did in Anderson, it was to look at other systems and see whether or not those systems could achieve the same interest achieved by restricted IRV or the city claims is achieved by restricted IRV. And if they do, then that weighs heavily against the city's plan. And I think the best evidence of the fact that those interests – the interest the city asserts here are achieved by other alternatives than restrictive IRV is the fact that the city uses those voting systems in other elections, that the city has other voting systems, that 57 of 58 other counties in the State use those systems, and that they're used nationally. So this is not a question of, you know, the city doesn't have any choices. The city has considerable choices. And that weighs in the balance in terms of determining whether or not this system meets the intermediate level of scrutiny. With regard to the runoffs, they said it's costing us a lot of money. $1.6 million every two years for a city that's got a $6 billion annual budget. But that's a December runoff, Your Honor, and – and there's no need for a December runoff. If you have a priority system, you don't even need a runoff. And 57 counties, you have a June-November runoff, so you don't have an extra election. So you just said a minute ago you weren't disputing the city's interest, and now you're – now you're raising questions about the city's. I'm not disputing the city's interest in saying it can't do unrestricted instant runoff voting. Those are the city's interests that I'm not disputing. The city has asserted five interests for restricted instant runoff voting, and they are as follows. First is that – and this is all in the briefs, and it's what they argue down below. Pardon me, Mr. Paranel, can I ask you a question? Yes, Your Honor. I'm running out of time. You're saying that the city does use other methods, uses a runoff after other elections. It uses a – it uses a plurality system. All right. So it uses a plurality system and uses a runoff system as other elections. Are you claiming that the failure to use those other systems is a violation of your equal protection rights? No, no, no. What I'm claiming is that – Answer my question. Your Honor, I could address the five interests the city has asserted, but I see that – Just save it. And let's hear from the other side. Now, I'll give you some additional time for rebuttal. All right. Thank you. Good afternoon, Your Honor. Andrew Shen, appearing on behalf of the city. May it please the Court, I would like to begin with a brief clarification about the Charter Amendment language of the Institute of Ranked Choice Voting in San Francisco. Keep your voice up. Yes, I'll do my best. We have – the Charter Amendment is in the record at several points, and at ER-676 there's one version. And when it describes the majority that is counted, the denominator, as you were, it described it as the majority of continuing ballots. So the language of the Charter Amendment is quite clear what is the denominator for these calculation purposes. To take a step back – But it's not, in fact, a majority of the total vote. And so one way of looking at it is that it's still a plurality system. I mean, I must say that I was very troubled by the denominator problem until I thought it through that way. So I think it's useful to realize that this just isn't a majority system. And if you think of it that way, then you're not trying to figure out why it is that you're losing people out of the denominator for purposes of counting who the majority is. Yeah, I agree, Your Honor. It does not guarantee majority. That's absolutely true. I noticed, for example, and I don't know whether you noticed this, that you had said in your briefs that the Minnesota system, although the Court there didn't say so, was actually a restricted system as well. That is true, and, Your Honor, that's a record. But it looked to me like it was a different restricted system, and I wonder if this matters. As I understand that system, it doesn't – its measure of who won is not this majority of the continuing ballot, but it's essentially a majority of all of the ballots. And if nobody ever gets to that point, that is the plurality of the last two. And in a way, that seems like a more honest way of doing it. The one thing that bothers me about this system is the fact that it has the appearance of being a majority system, and it's not, and that gives some force to the notion that people are dropping out and not being counted. I would have to admit, Your Honor, that I'm not familiar enough with a system in Minnesota as to how it's played out in actual elections. As you recall, that was a facial challenge, so there wasn't a history. I'm not going to have to – But it's defined as something called a threshold, and the threshold seems to be 50 plus 1 of the entire counted ballots. Your Honor, to the best of my knowledge, there is a restricted system, and if there is a sufficient number of candidates, I think you would come to a very similar situation. Restricted, but it's calculated differently, and so that people don't appear to be dropping out of the denominator, that's the difference. Right. And I have no reason to dispute that, Your Honor. I'm not quite as familiar with the Minnesota system, of course, as our system. An additional point I'd like to make here is that when you look at San Francisco's ranked-choice voting system, its three-candidate ranked-choice voting system, one of the things that is most apparent to the most casual voter in San Francisco, and which is relatively unique to San Francisco, is that the voters have the opportunity to select up to three candidates for each office. It does not impose a burden on any San Francisco voters whatsoever. And to further illustrate this point, we can compare it to a plurality system, which is something that appellants could see here, is entirely constitutional, and in fact is apparently one of the things that they're seeing as a remedy in this case. If you compare a plurality system where you get to select only one candidate for a particular office, and you compare it to San Francisco's three-candidate system, how can tripling the opportunity be a burden whatsoever? You have tripled the opportunity to have your vote counted towards the winning candidate. You have tripled the opportunity to avoid an exhausted ballot if you believe that's a burden of some sort or another. Given that, it's very difficult to see how there could be any constitutional problem with San Francisco's system. Kennedy. Well, if three is better than one, wouldn't 22 be better than three? I think that the Charter Amendment does contemplate allowing voters to rank all the candidates that are competing in a race, and in San Francisco elections, there can be as many as 22 candidates. But it's simply technologically infeasible for all the reasons that we described. It's certainly not totally infeasible. We know it's done in Australia, and we know it's done in some other places. And, frankly, I mean, your claim of infeasibility is really more time-bound. I mean, we don't – it wouldn't work with the system we have now. Right. And we wouldn't work with the system we have now. And I think more importantly, we made an effort to obtain a system that would allow this complete ranking of every candidate in the race. When we initially searched the field of voting systems in California that we could use, that were certified by the Secretary of State, we contacted all of them. We asked them, look, this is a system that we wish to install in San Francisco. Can you do this? And only two of those four companies responded. In a further pilot program, when we actually wanted to see what they could actually bring to the table, none of them could provide that option. I mean, we – to the extent that this is the marketplace in California. There were four voting systems that accompanied at the time. We contacted them all. This is what we could obtain. So given the technological limitation of the system that we could actually obtain and use in San Francisco, this is what we could achieve. But one oddity, though, is that the whole literature which exalts this system as the – as the – maybe the best or the most accurate in some abstract method way is assuming a nonrestricted system. In other words, the academic literature assumes a nonrestricted system. And I don't know if there's been any study at all of the restricted systems. I have to admit, Your Honor, I don't know the full extent of the academic literature on either unrestricted or restricted. But in terms of the systems that are out there, certainly San Francisco has provided voters in San Francisco with a greater opportunity than they would have under many other systems. One additional point I do want to make — You say to the argument that, you know, in the ballot initiative that was circulated in support of the initiative, that the voters should look at this and think of this as separate little runoff elections. I think that explanation was provided for illustrative purposes only. That is one of the ways you can explain it. But clearly it does not – it is not like a general runoff system. One of the most salient differences is that, of course, in a general runoff system, a voter casts two ballots at two different times. Under San Francisco's ranked choice voting system, all voters cast one ballot by election day. I mean, that's just one of the salient differences. And to the extent that the Board of Supervisors in their – in the ballot digest or in their arguments describe the voting system in a different way, it's really just for – just as an analogy and nothing more than that. Is there no constitutional limitation to how one figures out who has won an election? I mean, they've been concentrating here on whether they're counted. But there is also the question of counted for what. And I gather there's no – there's essentially no case law on plurality systems. Everybody assumes they're just fine. And certainly majority systems are fine. But this is some sort of a little weird oddity because – and I understand I'm very – I keep getting focused on the same thing. But the way you're deciding who's winning seems to me to be a little hard to explain. It's not really a majority. And it's not really – it turns out to be a plurality, but a plurality that is triggered by who has the majority of some subset of the total votes. And the question is, is there any constitutional realm at all with regard to those kinds of questions, who wins as opposed to who votes? Right. So in terms of the legal authority, the one case that we found that is – that confirmed, I think, everyone's belief, confirmed that plurality elections are completely constitutional is the Edelstein case, which is a California Supreme Court case. And that was the only one we could find addressing that point. In terms of what's constitutionally required, in terms of how the voters and how the people select their elected officials, I think the bottom line is that in any election system, the voters, however you assess the preferences, and the ranked choice voting system does a little bit differently than other systems, whichever candidate garners the greater amount of public support is the winner. So in a plurality election, let's say, moving away from ranked choice voting, whoever gets the highest percentage or the greatest number of votes in that system should be the winner. Or a winner. Should be the winner. I mean, maybe that's a little bit too obvious, but that is also what ranked choice voting does as well. It is assessing voter support for all the candidates on the ballot. And it does that by asking them to provide their preferences. Their first choice, their second choice, and third choice. And it moves it down the ballots, looking at those preferences. And that's what ranked choice voting does as every plurality system. Looks at which candidates have the strongest, highest preferences for the candidates. And that's what ranked choice voting does as every other system. What you're trying to do and what ranked choice voting certainly does. But their objection, as I understand it, is not to the ranked choice voting system, but to the dropping out of the denominator as you're going down this very long scheme of people who voted for three losing candidates. And the question to me still is, does that denominator contraction matter? I think it does not matter and is completely appropriate for San Francisco to continue the way that it has because the people that have dropped out of the race, as you've already pointed out in this argument, have picked the least popular or the losing candidates. Well, that explains why they're not in the numerator, but why does it explain why they're not in the denominator? That's what I want to know. Because we can disregard them for the denominator because we know they're not going to win the election.  And the reason I'm asking about that election is to support those candidates. That's why they're dropped out, because they have the least amount of public support, which is fundamentally what all elections try to measure. I understand that. So they have the least amount of support, so they can't win, but why does the fact that they were in the race not count anymore? Because in terms of who's left, so in terms of the more popular candidates or the ones that have not been eliminated, you're trying to assess which of those, the ones that are still alive, which one of those have the greatest support. And that's why you're dropping them out, why it's okay to drop the other ones from the denominator. Because you're only concerned with the candidates that the public actually wants, that the voters have expressed some preferences for, not the ones that you know already have very little public support or the least amount of public support. Just one additional point, Your Honors. One thing that the, one point that appellants make in the reply brief is that somehow we've conceded that our current three-candidate ranked-choice voting system does not advance several of the interests identified in the Voter Information Pamphlet Digest concerning this measure. And I do want to take some issue with that. There are three interests that our ranked-choice voting system has furthered in the years since it's been adopted. The first is the obvious saving of taxpayer time and money. You know, taxpayers don't need to go to the polls a second time. And it's undisputed in the record that it saves the city a great deal of money. Well, I say, but you can have it at a time you're having another election. That only works for some years. San Francisco is relatively unique in that it has elections in odd years. So in terms of having our, you know, if this was a hypothetical system, our general elections and runoff systems match up to a primary and general election on the state level, that would only work during the even years, not during the odd years. So we would still have to pay that additional funds for the odd years. We're relatively unique in that way. The second point is that if you look at the record, under ranked-choice voting, voter turnout has increased. The way that they've set it up is looking in terms of have voter turnout increased from November to December. That's how they set up their argument. But if you actually look at turnout in supervisory elections since 2000, since that was the advent of district-based supervisory elections in San Francisco, and you look at the numbers, voter turnout has increased. So — How can you link that to the ranked-choice voters, this new system? It could be just the interest of the candidates. No, I will admit, Your Honor, it's difficult to isolate that completely, which is why I think it's appropriate to just cabinet and supervisory elections because they tend to be the more competitive ones where you tend to have more candidates. And you can take them in two different slices. The first is looking at supervisory elections that occur in presidential election years, which there is higher turnout, for example, 2000, 2004, and 2008. You can see in the 2004 and 2008 November elections, turnout has gone up. Similarly, if you look at the non-presidential election years, 2002 and 2006, you can see that voter turnout go up from 2002 to 2006, before and then after ranked-choice voting. And then my third point, Your Honor, is that in terms of an interest that the Voter Information Pamphlet identified — Go back to your second point. Sure. In counting the greater voter turnout, are you counting the restricted system we have now in San Francisco as compared to the votes in general and primary elections? I'm comparing November elections to November elections. But you're not comparing November election plus December runoffs with November elections? No, I'm not, Your Honor. I'm not sure if I could do that in a completely additive way because I would assume that some people who did show up for the runoff had voted in general. Why couldn't you have runoff elections in San Francisco in the even years because you're going to have them anyway for state offices and then only have the restricted ranking choices in odd years? I'm sorry, Your Honor. Could you repeat the question? If you have — you're going to have runoff elections for state offices in even years, right? I think their position is that you would have at least a primary election and then a general election. Right. So you're going to have that. So why not have that as to municipal officers in those years because you're going to have a primary election and a general election? I think — well, one, I think there is a voter confusion issue there. I mean, I think if you told voters, you know, depending on the year, this is when you show up to vote at this, that, or the other thing, I think there is some voter confusion issues there. So I think there is some administratability issues. The fact is that that system has downsides and this system has downsides in terms of how it advances people's choices because in a runoff system, if you have a vote that's, say, 40 percent, 20 percent, and 19.9 percent, the people who are supporting the person with the 19.9 percent do not have a chance — well, a better example would be where it's clear that the two — numbers two and three have more votes than number one and they're very close. And in that system, the person who wants to vote for number three and if not for number three, for number two, that can't do it. I'm sorry. When you get to a runoff, you just have two votes, two people running. Right. So people who are supporting number three don't get to vote for that person in a runoff. Their vote is like — they could say it's like I'm being dropped off because that's not what — I want to vote for number three and if I can't vote for number three, I want to vote for number two, but I don't want number one to win. Right. I agree. And I think that's one relative virtue of the ranked choice voting system. When voters cast a ranked choice voting ballot, they get to choose from the entire field and assess their preference against the entire field. When you're going to a general runoff system, in the runoff, you're artificially restricting voters' choices. Maybe there are a lot of people who wanted some other people in the field who didn't make it to the runoff and they're essentially forced to choose between the lesser of two evils probably in many voters' eyes. I mean, that's one downside certainly of the general runoff system. Okay. Anything else?  Thank you, Your Honor.  Thank you. One minute for rebuttal. We gave you a fair amount of time. All right. First, counsel said that the purpose of an election is to determine that whoever gets majority voter support is the winner. The problem with this system is when they count the winner, we don't know who's got the majority voter support because a substantial number of votes are eliminated. That's a majority system. Let's just agree to that. It's just not a majority system. But why does that matter? There's no constitutional right to have a majority system. Well, no, but there's a constitutional right to have your vote counted. I do want to say one thing because counsel raised an issue that was not raised in the briefs, it's not in the record, and that is that this system increases voter turnout. It doesn't. The evidence that we've cited in the record shows that it doesn't. The city's never made that argument before, that it increases voter turnout. You can look at their briefs. It's raised here for the first time. It's based on the 2004 and 2008 presidential elections where, as we know, for reasons of who was running in those elections, caused voter turnout generally to increase. I guess the final thing I would say is that many, many voters are not given a choice to vote by this system when it really counts. And we look at it as a system, equivalent to a system where you've got a general runoff system, you've got ten candidates running in the general, everybody gets to vote for whichever candidate they want, and the top two get to go to the runoff if nobody has gotten 50 percent plus one. Then you have a runoff. The analogy to restricted IRV is everybody who voted for candidates 8, 9, and 10 in the general is precluded from voting in the runoff. They just don't get a vote. And I think this is parallel to that. Thank you for your time. I appreciate your time. Thank you. Thank you, counsel. We appreciate your arguments. Interesting case. The matter will be submitted at this time. And that ends our session for today. Thank you.
judges: Paez, Berzon, Bea